THE STATE ex rel. TOWN OF CANTON et al. v.
ALLEN, State Auditor.

In Banc, December· 23, 1903.

1. **Cities:** ISSUING BONDS: ORDERING ELECTION. For the purpose .of
testing the sense of the qualified voters of a town on the subject of
issuing waterworks or electric light bonds, etc., an order of the board
is sufficient. An ordinance is not necessary. The statute specific-
ally declares that "the council, trustees, etc., shall order an elec-
tion," which means an order or resolution.

2. ————: ————: NOTICE. Where the statute requires fifteen days'
notice by publication, a notice published on the nineteenth, twelfth
and fifth day preceding the election, is sufficient.

3. ————: ————: TWO PROPOSITIONS. An order to test the sense of
the voters on the subject of issuing bonds "for the purpose of con-
structing, maintaining and operating or purchasing an electric
light plant," etc., does not contain two propositions—one to issue
bonds to construct a plant, and the other to buy a plant already con-
structed. The same end was to be accomplished in either of two
ways, either to construct or to purchase, to be determined by
the council in their discretion.

4. ————: ————: ELECTION BY WARDS. An ordinance provided that
all special elections be held at one place to be designated by the
mayor, but the town had been divided into four wards, and by the
order directing an election on the question of issuing bonds, a vot-
ing place was designated in each ward. *Held*, that this special elec-
tion was not illegal and void simply because there were four voting
places instead of one, for at most that was nothing more than an
irregularity, and hence it did not invalidate the bonds.

5. ————: ————: SELLING LIGHT TO PRIVATE CITIZENS. A city has
the authority, under the Constitution of Missouri, to issue its bonds
for the purpose of erecting an electric plant, not only for lighting
its streets and alleys, but also for selling light to the citizens of the
town. The selling of light to the citizens is not a private use, but a
public use.

6. **Statute:** TITLE: TWO SUBJECTS. A statute "to enable cities, operat-
ing under special charter, to issue bonds for the macadamizing, pav-
ing, curbing and improving of streets, and constructing public sew-
ers within such cities, and for the purpose of constructing or pur-
chasing electric light and waterworks in said cities," does not con-
tain more than one subject in its title.

Mandamus.

PEREMPTORY WRIT AWARDED.

*Arthur Hilbert* and *W. M. Hilbert* for relators.

*Edward C. Crow,* Attorney-General, *Sam B. Jeffries,* Assistant Attorney-General, and *R. W. Ray* for respondent.

BURGESS, J.—On the 15th day of June, 1903, the relators filed in this court their petition for a writ of mandamus, directed to Albert O. Allen, State Auditor of Missouri, commanding him to make or cause an examination to be made in order to ascertain whether the law was complied with in the issuance of certain bonds to the amount of $10,000, issued by the town of Canton, for the purpose of constructing, maintaining, operating or purchasing an electric light plant to supply the town of Canton and all persons and parties therein with light. And if, upon such examination it be found the law has been complied with in the issuing of said bonds, to register the same, and to certify by indorsement thereon, that all the provisions of the laws of the State authorizing their issue has been complied with. The defendant Allen waived the issuance of the writ, and made his return thereto.

The relators in their petition stated that the town of Canton now is, and was at the time of all the transactions therein mentioned, a municipal corporation, containing less than ten thousand inhabitants, organized under a special charter; and set out an act of the General Assembly of the State of Missouri, approved March 19, 1873; and alleged that F. W. Benbow is mayor of said town, and his co-relators are members of the board of trustees of said town; that the defendant Albert O. Allen is the Auditor of the State, and as such, it was, and is, his duty, when bonds are voted and issued by municipal corporations for the purpose of constructing,

maintaining and operating or purchasing an electric light plant, to supply such city or town and all persons and parties therein with light, and when the bonds are presented to him, with the proper proof that the law has been complied with in the issue of such bonds, to register them in a book or books provided for that purpose, and to certify by indorsement on such bond or bonds that all the conditions of the law authorizing their issue have been complied with.

"Your relators further state that in pursuance to the authority given them by the laws of the State of Missouri, desiring to test the sense of the qualified voters of the town of Canton on a proposition to increase the indebtedness of the town by issuing ten thousand dollars in bonds for the purpose of constructing, maintaining, operating or purchasing an electric plant to supply the town of Canton and all persons and parties therein with light, they caused fifteen days previous notice to be given by publication in a newspaper printed and published in the town of Canton, of an election to be held on the 23d day of September, 1902, for the purpose of testing the sense of the qualified voters of the town of Canton on a proposition to increase the bonded indebtedness of the town of Canton, by issuing ten thousand dollars in bonds for the purpose of constructing, maintaining and operating or purchasing an electric plant to supply the town of Canton and all persons and parties therein with light, which said order of notice was made on September 2, 1902, by the board of trustees and approved by the mayor. A copy of said order is as follows:

" 'It is hereby ordered by the board of trustees of the town of Canton, State of Missouri, that a special election be held in the several wards in the town of Canton, county and State aforesaid, on the 23d day of September, A. D., 1902, to-wit: First ward, T. J. Maggard & Son's office; Second ward, at the Canton House sample room; Third ward, at the sheriff's office in courthouse; Fourth ward, at Thomas W. Furlong's office; Fifth

ward, at Starr & Zahn Lumber Company's office, for the purpose of testing the sense of the qualified voters. of said town of Canton upon a proposition to increase the debt of the town of Canton by issuing bonds of said town to the amount of ten thousand dollars for the purpose of constructing, maintaining and operating or purchasing an electric light plant to supply said town of Canton and all persons and parties therein with light,. said bonds to be known and designated as electric light bonds of the town of Canton, State of Missouri. All of said bonds shall be dated on the 1st day of October,. A. D., 1902, and shall bear no greater rate of interest. than four per cent per annum, payable semiannually, and having annexed thereto interest coupons. Said bonds and interest-bearing coupons to be made payable to bearer at Citizens Bank of Canton, at Canton, Missouri. All of said bonds shall be of the denomination of five hundred dollars each, and to be numbered from 1 to 20, inclusive. Said bonds to become due as follows:. Number one to be due five years from date, number two to be due six years from date, number three to be due seven years from date, number four to be due eight years from date, number five to be due nine years from date, number six to be due ten years from date, number seven to be due eleven years from date, number eight to be due twelve years from date, number nine to be due thirteen years from date, number ten to be due fourteen years from date, numbers eleven to twenty, inclusive, to be due twenty years from date. Said bonds numbered eleven to twenty, inclusive, or one or' more of them, in order of their numbering, may be paid on the 1st day of October of any year after ten years from the date thereof, at the option of the said town of Canton, which option shall be exercised by the board of trustees of the town of Canton for and in behalf of said town by giving notice in writing to said Citizens Bank of Canton, in the town of Canton, Missouri, at least ten days before the first day of October of any such year.

" 'At said election the voters shall vote by ballot, and those voting in favor of the increase of the debt of the town for the purpose of constructing, maintaining and operating or purchasing an electric light plant to supply said town of Canton and all persons and parties therein with light shall have printed on their ballots, "For increase of debt. Yes." And those voting against the increase of the debt of the town for the purpose of constructing, maintaining, operating or purchasing an electric plant to supply said town of Canton and all persons and parties therein with light shall have printed on their ballots, "For increase of debt.   No."

" 'It is further ordered that at least fifteen days previous notice shall be given of the election herein ordered, by publication in the Canton News, a weekly newspaper published in the town of Canton, said notice to be signed by the mayor and attested by the town clerk.'

"Relators further inform the court that after said election by an ordinance duly passed by the board of trustees of the town of Canton, signed by the mayor, attested by the clerk and published, declared the result of said election to be, that the following proposition was carried and adopted by the vote and assent of two-thirds of the qualified voters of the said town of Canton voting at said election as certified by the judges and clerks of said election to the board of trustees of the said town of Canton and as counted and cast up by the town clerk in the presence of the board of trustees on September 24, 1902.   Said ordinance is as follows:

" 'Ordinance No. 107.

" 'An ordinance declaring the result of the special election held in the town of Canton on the 23rd day of September, A. D. 1902, and providing for the issuing of bonds of said town of Canton for the purpose of constructing, maintaining and operating or purchasing an electric plant to supply the Town

of Canton and all persons and parties therein with light.

" 'Be it ordained by the board of trustees of the town of Canton, Missouri, as follows:

" 'Section 1. At a special election held in the town of Canton on the 23rd day of September, A. D. 1902, under and in accordance with the statutes of the State of Missouri, in such case made and provided, the following proposition was carried and adopted by the vote and assent of two-thirds of the qualified voters of said town voting at said election as certified by the judges and clerks of said election to the board of trustees of said town of Canton and as counted and cast up by the town clerk in the presence of said board of trustees on the 24th day of September, A. D. 1902, which proposition was as follows to-wit: ''To increase the debt of the town of Canton by issuing bonds of said town to the amount of ten thousand dollars for the purpose of constructing, maintaining and operating or purchasing an electric plant to supply said town of Canton and all persons and parties therein with light, thereby authorizing the town of Canton to increase the debt of the town of Canton by issuing the bonds of the town to the amount of ten thousand dollars.''

" 'Section 2. There are hereby ordered to be issued bonds of the town of Canton in the name of the town in the amount of ten thousand dollars.

" 'Section 3. Said bonds to be known and designated as ''Electric Light Bonds of the Town of Canton, State of Missouri.''

" ' 'All of said bonds shall be dated the first day of October, A. D. 1902, and shall bear no greater interest than four per cent per annum, payable semiannually, and having annexed thereto interest coupons. Said bonds and interest coupons to be made payable to bearer at Citizens Bank of Canton, at Canton, Missouri. All of said bonds to be signed by the mayor of the town and by the clerk of the town, and each bond shall have

affixed thereto the corporate seal of the town, and interest coupons shall be signed by the mayor and the town clerk.   All of said bonds shall be of the denomination of five hundred dollars each and to be numbered from 1 to 20, inclusive.   Said bonds to become due as follows:  Number one to be due five years from date, number two to be due six years from date, number three to be due seven years from date, number four to be due eight years from date, number five to be due nine years from date, number six to be due ten years from date, number seven to be due eleven years from date, number eight to be due twelve years from date, number nine to be due thirteen years from date, number ten to be due fourteen years from date, numbers 11 to 20, inclusive, to be due twenty years from date.   Said bonds from numbers 11 to 20, inclusive, or one or more of them in order of their numbering may be paid on the first day of October of any year after ten years from the date thereof, at the option of the said town of Canton, for and in behalf of said town, by giving notice in writing to said Citizens Bank of Canton in the town of Canton, Missouri, at least ten days before the first day of October of any such year.

" 'Section 4.   The board of trustees shall annually levy and collect on the value of all property within the town of Canton taxable by law, a tax of one-tenth of one per centum, or so much as may be necessary for the purpose of paying the interest coupons on said bonds as they may mature which said amount shall be paid in cash.  Said tax shall be known as "Electric Light Interest Tax;"and said board of trustees of the town of Canton shall annually levy and collect on the value of all property within the town of Canton taxable by law, a tax not exceeding one-tenth of one per centum, to be known as "Electric Light Sinking Fund," which shall constitute a sinking fund to pay off, cancel and redeem the principal of said bonds whenever the same shall mature

or be called in for redemption, and said tax shall be paid in cash.

" 'Section 5. Said bonds shall be registered as provided by law, a copy of this ordinance shall be printed on the back of each of said bonds and shall be referred to in the body of said bonds, and shall be considered a part thereof. Upon the back of each bond shall be printed a certificate to be signed and certified by the Auditor of the State of Missouri, stating that the law has been complied with in the issue of the within bond and that it has been duly registered in his office as is required by law.

" 'This ordinance shall be in force from and after its publication. Approved on this 24th day of September, A. D. 1902.

" 'F. W. BENBOW, Mayor of Town of Canton.
" 'Attest: E. F. HENDERSON, Town Clerk.'

"Said relators further inform the court that thereafter, in pursuance to the authority given them by the laws of the State of Missouri, they issued bonds of the town of Canton in the name of the town of Canton to the amount of ten thousand dollars for the purpose of constructing, maintaining and operating or purchasing an electric plant to supply the town of Canton and all persons and parties therein with light; that in the issuing of said bonds they complied with all the laws of the State of Missouri made and provided for the issuing of bonds for the purpose of constructing, maintaining and operating or purchasing an electric plant to supply the town and all persons and parties therein with light.

"Relators further inform the court that they presented the bonds so issued to the State Auditor, Albert O. Allen, for registration and paid the said Albert O. Allen, State Auditor, the requisite fee for registering the same and submitted to him the proper proof that they had complied with all the requirements of the law in the issuing of said bonds. Although your petitioners have complied with the law made and provided in such

case and for such purpose, the said respondent, as Auditor for the State of Missouri, has refused and still fails and refuses to register said bonds, and to indorse on them a certificate setting forth that they have complied with the law made and provided for issuing bonds for the purpose of constructing, maintaining and operating or purchasing an electric plant to supply the town and all persons and parties therein with light.

"That by reason of the premises your relators have been and still are prevented from exercising their rights, in constructing, maintaining and operating or purchasing an electric plant and they have no remedy in the premises by or through ordinary process or proceedings by law.

"Wherefore they pray this honorable court to award against the said respondent, Albert O. Allen, State Auditor, a writ of mandamus, commanding the said State Auditor, Albert O. Allen, to make an examination, or to cause an examination to be made, in order to ascertain whether the law has been complied with in the issuing of said bonds. And if upon such examination it is found that the law has been complied with in the issuing of said bonds, to register the same, and to certify by indorsement thereon that all the provisions of the law of the State of Missouri authorizing their issue has been complied with, and for such other process and remedies as may to the court seem just and equitable."

The Auditor in his return admits all the allegations in the petition, down to and including that paragraph which reads as follows:

"Respondent further admits that the bonds so authorized under the purported election and notice thereof, and the ordinance so attempted to be passed, were executed by said relator and presented to the respondent for registration." The return then proceeds as follows:

"Respondent further avers that soon after the said

bonds were filed with him for registration, he, as State Auditor, aforesaid, made an examination of the proof submitted with said bonds, and upon said examination found that relators had not complied with all the requirements of the law authorizing their issuance by relator, the town of Canton, and their registration by respondent, as State Auditor, for the following reasons:

"That by section 1 of article 2 of said charter of the town of Canton, which is a special and public act, the corporate powers and duties of said town are vested in the mayor and board of trustees; that because of said charter provisions, said town could exercise no corporaet powers except by the co-ordinate action of the mayor and board of trustees of said town; that said election was ordered by the board of trustees of said town instead of by the co-ordination of the mayor and board of said town; because the holding of said election was never authorized nor ordered by an ordinance of said town duly passed by its board of trustees and duly signed by its mayor, and published in a newspaper published in said town within thirty days after its passage; that said special election, under the law, could not be ordered except by an ordinance of said town of Canton theretofore duly passed by its board of trustees and duly signed by its mayor and published in a newspaper published in said town within thirty days after its passage, and that said special election was illegal and void.

"Because at least fifteen days notice of said special election was not given in a newspaper published in said town or in any other way. Because at said special election, the proposition voted on and declared by said ordinance to be carried and adopted by the assent of two-thirds of the qualified voters of said town voting at said election, held as aforesaid, was as follows, to-wit:

" 'To increase the debt of the town of Canton by issuing bonds of said town to the amount of ten thousand dollars for the purpose of constructing, maintaining and operating or purchasing an electric light plant

to supply said town of Canton and all persons and parties therein with light, thereby authorizing the town of Canton to increase the debt of the town of Canton by issuing bonds of the town to the amount of ten thousand dollars.'

"That said so-called proposition contained two propositions, one to increase the debt of the town by issuing its bonds to the amount of ten thousand dollars for the purpose of constructing, maintaining and operating an electric plant to supply the town and all parties and persons therein with light; the other proposition to increase the debt of the town by issuing its bonds for said sum for the purpose of purchasing an electric plant already in said town to supply said town and all persons and parties therein with light; that said two propositions being contained together in one made it impossible for any voter by his vote to say which of the two propositions contained in said so-called proposition he favored or opposed. Because said manner of submission rendered it impossible for any voter to vote for or against the proposition he favored or opposed, said election was illegal and void.

"That although said town by its ordinance declared that the said election authorized it to issue the bonds described in said petition and heretofore referred to, in said amount, and ordered said bonds in said amount, number and description to be issued, it did not by said ordinance say whether said bonds were to be issued for the purpose of obtaining the means with which to construct, maintain and operate an electric plant to supply said town and all persons and parties therein with light; or whether said bonds were to be used to provide the means with which to purchase the electric plant which now is and for many years has been constructed and operated in said town, to be used to supply the said town and all persons and parties therein with light.

"That at said special election, held as aforesaid, a voting precinct was established by said town and its

officers and agents in one place in each of the five wards
in said town, and the voters residing in said ward re-
spectively were required to vote at the voting place in
each one of the five wards of said town re-
spectively and votes were actually cast in one
place in each of the five wards in said town
at said special election held as aforesaid; that an
ordinance of said relator, the town of Canton, in full
force and effect, when said special election was held,
the same being section 3, chapter 3, of the Revised and
Amended Ordinances of 1887, of said town, printed in
book form by said town, require 'all special elections
to fill a vacancy occurring in the office of mayor, re-
corder or marshal, or held for any other purpose, to be
held at one place in said town, such place to be desig-
nated by the acting mayor.' The special election was
therefore illegal and void, because in violation of said
ordinance; there being no other ordinance regularly
passed and published providing for the places at which
said election should be held.

"Because said ordinance of the said town passed as
aforesaid, ordering the issuing of said bonds and pro-
vided for said tax of one-tenth of one per centum to pay
the principal of said bonds, contravenes section 1 of
article 10 of the Constitution of Missouri; and also con-
travenes section 3 of said article 10, and section 10 of
said article 10 of the Constitution of Missouri, in this,
that it provides that the bonds aforesaid are to be issued
and the taxes aforesaid are to be levied and collected
for the purpose of enabling said town to erect, main-
tain and operate or purchase an electric plant, with
which not only to light the streets, alleys, and public
places of said town, but also to erect poles along the
streets, alleys and public places in said town and
string the same with wires for furnishing elec-
tric light to all persons and corporations resid-
ing and doing business in said town, which is not
a public purpose, not a corporate purpose, nor a town

purpose, and therefore is in contravention of said sections 1, 3 and 10 of article 10 of the Constitution of Missouri.

"Because the pretended authority for holding said election and issuing said bonds is an act of the General Assembly of the State of Missouri, entitled 'An Act to enable cities, towns and villages, operating under a special charter, of ten thousand inhabitants or less, to issue bonds for the macadamizing, paving, curbing and improving of streets and constructing public sewers within such cities, towns and villages, and for the purpose of constructing or purchasing electric light and water works in said towns,' with an emergency clause, approved March 23, 1897, which said act contravenes section 28 of article 4 of the Constitution of Missouri, in this, that said title contains more than one subject, and in this, that said law provides that the municipal corporations named in the title to said act, shall have power and authority to issue their bonds and construct, maintain and operate or purchase electric plants with which to supply such cities and towns, and all persons or parties therein, with electric light for private consumption, while there is nothing in said title to indicate that said act was intended to give said cities and towns authority to purchase an electric light plant with which to engage in manufacturing and supplying electric light for private consumption to persons and corporations residing or doing business in such city or town.

"Because said act of the General Assembly of the State of Missouri, approved March 23, 1897, and entitled as aforesaid, contravenes sections 1, 3 and 10 of article 10 of the Constitution of Missouri, because the same provides that the cities and towns mentioned therein shall have power and authority to issue their bonds to construct, maintain and operate electric plants, not only to supply such cities and towns with electric light for their streets, alleys and other public places, but also to supply all private persons and parties there-

in with electric light for private consumption, which is not a corporate purpose, nor a public purpose, nor a town purpose, and said act of the Legislature therefore contravenes said section 1 of said article 10 of the Constitution of Missouri, by which the Legislature of this State is prohibited from granting to municipal corporations power to levy taxes for any other than corporate purposes, because said section 3 of said article 10 of said Constitution provides 'that taxes may be levied and collected for public purposes only;' because said section 10 of article 10 of the Constitution of Missouri prohibits the General Assembly from passing any law giving authority to any town to levy taxes for any other than a public purpose.

"Because said act of the General Assembly of the State of Missouri of March 23, 1897 (Laws 1897, p. 49) contravenes section 20 of article 2 of the Constitution of Missouri, in this, that it authorizes the municipality therein named to provide electric plants to be owned by the municipality, with which to supply such municipality and all persons and parties therein with light, and provides that for the purpose of doing so, said municipalities may issue bonds to provide means for paying for such plants, which said bonds and the interest thereon shall be paid by taxing the citizens of such town and their property; and also the property of non-residents of said town therein situated; that the erection of a plant with which to supply private persons and parties with electric light, for their private use and consumption, and paying for the same by taxation, is taking private property for private use in contravention of said section 20 of article 2 of the Constitution of Missouri.

"Because said ordinance of said town of Canton authorizing the issue of said bonds as aforesaid contravenes said section 20 of said article 2 of the Constitution of Missouri, in this, that it authorized the issue of bonds by said town of Canton for the purpose of raising

means to provide an electric plant to be owned by the town and operated by it, with which to supply such town and all private persons and parties therein with electric lights, and provides that said bonds and the interest thereon shall be paid by taxing the citizens of such town and their property and also the property of non-residents of said town situated therein; that supplying electric light to private persons and parties is a private use, and that raising money by taxation to provide a plant with which to supply electric light to such private persons and parties for their private use and private consumption is taking private property for private use, in contravention of said section 20 of article 2 of the Constitution of Missouri.

"Because said act of the General Assembly of March 23, 1897, violates section 3 of article 10 of the Constitution of Missouri, which declares that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, in this, that the electric light plant proposed to be erected by said town with the proceeds of the bonds sought to be registered, which said plant would be used not only to supply electric light for the streets and public places of said town but also to supply electric light to all private persons and parties therein for private consumption, would not and could not be taxed for State, county or municipal purposes; while the electric light plant which now is and was at the time said special election was held and which was and is owned by a private corporation of this State and is engaged in the electric light business in said town and is and for a long time past has been under contract to furnish electric light to many of the citizens of said town, must and will be compelled to pay taxes to the State, county and also to the town of Canton.

"Respondent states that on the 3rd day of September, 1891, the relator, town of Canton, granted a franchise right for an electric light plant to be erected,

maintained and operated within the corporate limits of said town for a period of twenty years from said date, and therein granted authority for the use of the streets, alleys and public grounds of said town for the erection of the poles, wires and other necessary appliances, and provided that the franchise therein granted should not be exclusive. Said franchise also provided that the setting of poles and the stringing of wires should be under the control of the mayor and the board of trustees, and that the company to which said right was granted, its successors and assigns, should furnish the said town of Canton with incandescent and electric lights, as the town might thereafter contract for, of thirty-two candle power, at not exceeding one dollar and fifty cents per month per light from dark until midnight (moonlight schedule) and that said company so operating under said franchise should furnish to the residents of said town incandescent and electric lights for commercial and domestic purposes, as may be thereafter contracted for of sixteen candle power each at not exceeding the following rates: One sixteen candle power lamp, per month, seventy-five cents; two sixteen candle power lamps, seventy cents each per month; three or four sixteen candle power lamps, sixty-five cents each per month; five to twelve sixteen candle power lamps, sixty cents each per month. All night lamps, ninety cents per month, or the same lights shall be furnished by meter at not exceeding one cent per hour per light of sixteen candle power.

"And respondent further says that soon after the granting of said franchise, the company to which it was granted, or its successors and assigns, constructed an electric light plant in acordance therewith, and has used and exercised said franchise right from said time to the present day, and is now so using and exercising, and that said franchise has yet several years to run before its expiration, and said town by ordinance having induced the company to construct a plant as aforesaid,

and to expend large sums of money in its improvement and extension, is without authority to construct an electric light plant for the furnishing of light to the inhabitants of said town for domestic and commercial use; that said act of the General Assembly, approved March 23, 1897, does not apply in so far as it affects towns, cities and villages in this State, so situated and conditioned, only to the extent of giving said town authority to purchase the electric plant previously constructed under and by virtue of the franchise grant therefrom; and that said town was without authority, under said act, to construct an electric light plant to furnish domestic and commercial lighting, so long as said franchise is in force, for the reason that it places the burden of taxation upon a certain business to support and maintain a competitor in that business; deprives persons and corporations of property without due process of law and without just compensation and impairs the obligations of contracts, contrary to the provisions of sections 15, 20, 21 and 30 of article 2 of the Constitution of Missouri, and section 10 of article 1 of the Constitution of the United States.

"Respondent further states that he holds the said fees paid to him by relators for the registration of said bonds with the understanding and upon condition that they shall be returned to the said relator as soon as or whenever it is judicially determined that said bonds are not eligible for registration, and that said money is held by him with the full knowledge, understanding and agreement of said relators, and that respondent is now and always has been ready and willing to return said money to relator upon demand regardless of the understanding for which it is being held.

"Respondent for further return denies each and every allegation in the petition not herein expressly admitted or denied.

"Wherefore, respondent having fully answered as to his official conduct in the premises, and having shown

that said bonds are not eligible to registration, asks to go hence with his costs.''

Relator filed reply to the return of the respondent, in which it denied all affirmative allegations therein.

The relator, the town of Canton, was organized under a special charter (Laws 1873, p. 210) and, by the provisions of section 6275, Revised Statutes 1899, which applies to such towns, is conferred the authority to issue its bonds to construct, maintain and operate or purchase water works and electric plants to supply such cities or towns and all persons and parties therein with water and light. And by the following section (6276) it is provided, that for the purpose of testing the sense of the qualified voters of such city or town upon a proposition to become indebted or to increase the debt thereof, by issuing bonds for the purpose mentioned in the preceding section, the council, trustees or other legislative authority of such city or town, shall order an election to be held, of which not less than fifteen days' previous notice shall be given by publication in some newspaper published in such city or town. Such election shall be held and judges and clerks thereof appointed as in case of other elections in such city or town, or in such manner and under such regulations as may be prescribed by ordinance. Such special elections may be held at the time and place of a general election, and the judges, clerks and other officers of such general election may act as judges, clerks and other officers of such special election.

At an adjourned meeting of the board of trustees of the town of Canton held at the office of the mayor of said town on September 2, 1902, it was ordered by said board that a special election be held in the several wards, in said town, on the 23d day of September, 1902, at four places, in the four different wards in said town, for the purpose of testing the sense of the qualified voters of said town upon a proposition to increase the debt of said town by issuing its bonds to the amount of

ten thousand dollars for the purpose of constructing, maintaining and operating or purchasing an electric plant to supply said town and all persons and parties therein with light.

It is claimed by respondent that there was no *ordinance* ordering the election; and that, as it was held in pursuance of an *order* only of the board of trustees, it is void. It is true, as contended by respondent, that by section 16, article 6, Laws of 1873, p. 216, it is provided that the style of all ordinances shall be: "Be it Ordained by the Board of Trustees of the Town of Canton," but the order of the board in question does not pretend to be an ordinance, nor was it necessary that an ordinance should have been passed for the purpose; but an order of the board was all that was necessary, and it is expressly so provided by section 6276, supra, in accordance with whose provisions the order was made, and, is therefore valid.

It may be conceded that a resolution will not take the place of an ordinance where an ordinance is required by charter; or, if such requirement is implied by necessary inference. But in case an ordinance is not expressly required by the charter or statute, but is silent on the subject, a resolution duly passed has been held equivalent to a formal ordinance. [Merchants Union Barb Wire Co. v. Railroad, 70 Iowa 105.]

In that case it was said:

"In our opinion the city may grant the right of way in the streets to a railroad company, which is simply permission to construct the railroad thereon, under prescribed restrictions, by resolution or vote duly recorded. There exists no necessity for expressing this grant of authority by ordinance, as the statute (Code, sec. 464) conferring authority upon a city to authorize or forbid the construction of railway tracks in its streets does not prescribe the manner of exercising the authority, whether by ordinance, resolution, or vote duly recorded. The statute being silent upon this subject,

the authority may be exercised by resolution duly passed, or vote duly taken, appearing in the proper record of the city. [State v. Jersey City, 27 N. J. L. 493; City of Quincy v. Railroad, 92 Ill. 21; Sower v. Philadelphia, 35 Pa. St. 231; First Municipality v. Cutting, 4 La. Ann. 335; State ex rel. v. Henderson, 38. Ohio St. 644.] We conclude that the resolution authorized defendant to construct the side tracks.''

In the case at bar we are not called upon to go that far, as it is *expressly* provided by defendant's charter, that for the purpose of testing the sense of qualified voters of said city for the purpose heretofore indicated, ''the council, trustees, or other legislative authority of such town or city shall *order* an election to be held,'' etc. The record affirmatively shows that the order or resolution was passed with the same formalities as an ordinance is by the defendant's charter required to be passed, and it is of the same force and effect as an ordinance. [Wheeler v. City of Poplar Bluff, 149 Mo. 36.]

It is said that the writ should be dismissed, because fifteen days' notice of said special election was not given in a newspaper published in said town, or in any other way. The resolution required that fifteen days' previous notice should be given of the election, by publication in the Canton News, a weekly newspaper published in the town of Canton. It appears from the record that the notice of the election was published in the Canton News, a weekly newspaper published in said town, the first insertion being made on September 4, 1902, the second on the 11th and the third on the 18th of said month, while the election was held on the 23d day of the same month; nineteen days having elapsed from the time of the first insertion and the election. It was held in the case of German Bank v. Stumpf, 73 Mo. 311, that where a deed of trust required that thirty days' notice of sale be given by publication in a daily paper, thirty days must intervene between the first publication and the day of sale, but while it is customary

and prudent, it is not essential that the notice appear in every issue of the paper. The same rule is announced in In re Woolridge, 30 Mo. App. 612; Nishnabotna Drainage District v. Campbell, 154 Mo. 151, and Kellogg v. Carrico, 47 Mo. 157. It therefore seems that the notice was published in conformity with the resolution.

The proposition voted on at said election and declared by an ordinance of the town to be carried and adopted by the assent of two-thirds of the qualified voters thereof, voting at said election, contained the following: "To increase the debt of the town of Canton by issuing bonds of said town to the amount of ten thousand dollars, for the purpose of constructing, maintaining and operating or purchasing an electric light plant to supply said town of Canton and all persons and parties therein with light, thereby authorizing the town of Canton to increase the debt of the town of Canton, by issuing bonds of the town to the amount of ten thousand dollars." It is argued by the respondent that there were submitted to the vote of the people by this order, two propositions, one to increase the debt of the town by issuing its bonds to the amount of ten thousand dollars for the purpose of constructing, maintaining and operating an electric light plant to supply the town and all parties and persons therein with light; the other to increase the debt of the town by issuing its bonds for said sum for the purpose of purchasing an electric plant already in said town to supply it and all persons and parties therein with light; that said propositions being submitted together, made it impossible for any voter by his vote to say which of the two propositions he favored or opposed, in consequence of which said election was void. In support of this position, respondent relies chiefly upon the case of McBryde v. City of Montesano, 7 Wash. 69.

The propositions submitted to the voters in that case were two, which were entirely different and distinct propositions, one to fund $20,000 of an old debt, the

other to borrow $5,000 for future use, but they were submitted as one, and it was held that they could not be united, so as to have one expression of the voter answer both propositions. There is a marked distinction between that case and the one at bar, in this: in that case there were clearly two distinct propositions, having different objects in view, while in the case in hand, the proposition submitted to the voter was to increase the bonded indebtedness of the town to purchase or erect an electric light plant. The same end was intended to be accomplished, but in two different ways, to be determined upon by the board of trustees in the exercise of their discretion. The proposition submitted to the voters was the exact proposition that they were called upon to decide, and in a way that could not mislead any one, and, while it is in all probability true that some of the voters might have wished to vote for the erection of the plant, and others to purchase a plant already erected, and they did not have the chance to express their views in this regard, we do not think that such fact invalidates the election that was held, or the bonds that were issued by the town in pursuance thereof. [Thompson-Houston Electric Co. v. City of Newton, 42 Fed. 723.[

It seems that the town of Canton is divided into four wards, and, by ordinance, a voting place was designated in each ward at which the election was held, while another ordinance of the city then in force, required that all special elections be held at one place in said town, to be designated by the mayor. It is said by respondent that the special election was therefore illegal and void, because in violation of said ordinance. There is no pretense that the election was fraudulent, or that the result was not a fair expression of the people. It was nothing more than an irregularity, and should not, under the circumstances, be held to invalidate the election, or discredit the bonds. [State ex rel. v. Town of Westport, 116 Mo. 582, and authorities cited; Light and Magnetic Water Co. v. City of Lebanon, 163 Mo. 246.]

The point is made that the ordinance ordering the issuing of said bonds contravenes section 1 of article 10 of the Constitution of this State, and also section 3 of article 10, and section 10 of said article 10, in that it provides that the bonds are to be issued and the taxes levied and collected for the purpose of enabling said town to erect, maintain and operate or purchase an electric plant, with which, not only to light the streets, alleys and public places of said town, but to string the same with wires for furnishing electric light to all persons and corporations residing and doing business in said town, which is not a public purpose, nor a town purpose, and therefore in contravention of said sections 1, 3 and 10 of article 10 of the Constitution of this State. In passing upon a similar question in Thompson-Houston Electric Co. v. City of Newton, supra, it was said: "It has been the uniform rule that a city, in erecting gasworks or waterworks, is not limited to furnishing gas or water for use only upon the streets and other public places of the city, but may furnish the same for private use." And the statutes of this State now place electric light plants in the same position, their object and purpose being the same, that is, for the protection of the lives and property of all its citizens, which is manifestly a public purpose; and is none the less so, because it authorizes the erection of poles along the streets, alleys and public places in said town, and the stringing the same with wires for furnishing electric lights to all persons and corporations residing and doing business in said town. By the right to erect and maintain, is implied the authority to do everything absolutely necessary to that end, which in no way conflicts with the Constitution.

It is asserted that the Act of 1897 is in contravention of section 28, article 4, of the State Constitution, in this, that the title to said act contains more than one subject, and in this, that said law provides that the municipal corporations named in the title to said act, shall

have power and authority to issue their bonds and con-
tract, maintain and operate or purchase electric plants
with which to supply them, and all persons and parties
therein, with electric light for private consumption,while
there is nothing in said title to indicate that said act was
intended to give said cities and towns authority to pur-
chase an electric light plant with which to engage in
manufacturing and supplying electric light for private
consumption to persons and corporations residing and
doing business in such city or town.

With respect to the first proposition we are unable
to agree, and are clearly of the opinion that everything
in the act is germane to, and congruous with the title
to the act.    Its title is broad enough to cover all of its
provisions, and they being in consonance therewith, the
objection is not well taken.    As to the other objection,
the power to purchase electric light plants by towns
having special charters, is expressly given by section
6275, supra.

With respect to the other constitutional questions
presented by the return, they are of the same character
and upon the same lines as those upon which we have
passed, and for like reasons the contentions are unten-
able.

There is no merit in the affirmative defense set up
in the answer.    Our conclusion is that the writ should
be made peremptory.    It is so ordered.    All concur.