MISSOURI POWER & LIGHT COMPANY, a Corporation, Appellant, v. CITY OF PATTONSBURG ET AL.—125 S. W. (2d) 20.

Division Two, February 21, 1939.

*Dean H. Leopard* and *Anderson, Gilbert, Wolfort, Allen & Bierman* for appellant.

*Gillihan & Gillihan, Charles D. Brandom* and *R. H. Musser* for respondent.

WESTHUES, C.—Appellant, Missouri Power & Light Company, filed this suit in the Circuit Court of Davies County, seeking an injunction, against the city of Pattonsburg and its officials, to restrain the letting of contracts for the construction of an electric light system, the issuance of bonds, the levying of taxes for the payment of the bonds, the operation of the plant and for such other relief as the court may deem proper.

The defendants filed a demurrer to the petition alleging that the petition did not state facts sufficient for a court of equity to grant any of the relief prayed for. The trial court sustained the demurrer and appellant declined to plead further. Judgment was entered dismissing the petition, whereupon the plaintiff appealed.

Appellant did not offer to give a bond or seek a temporary injunction. Pending a hearing of the case the city proceeded to the construction of the plant. Appellant filed a second amended petition wherein it was stated that the bonds had been sold, the plant constructed and in operation. Appellant contends that the election at which the bonds were authorized was void. It is argued that Section 12a, Article X, of our Constitution, authorizes the city to submit to the voters the question of becoming indebted "for the purpose of purchasing or constructing . . . electric or other light plants;" that the question submitted to the voters in this case authorized the issuance of bonds in an amount of $50,000 for the purpose of constructing an electric plant, but did not include the alternative of purchasing a plant. It is argued that the constitutional provision "does not authorize the aldermen to decide in advance whether to purchase or construct, but after the vote the city officials decide on the method of acquisition." Our search has not revealed any case where such contention has been made. The case of State ex rel. City of Columbia v. Allen, 183 Mo. 283, 82 S. W. 103, is cited as authority. In that case the city of Columbia submitted to the voters the question of issuing bonds for the purpose of purchasing a light and water plant and for the construction of such plant. The contention was made that the question was submitted in the alternative and therefore the election was void. But this court held that the question submitted was, whether or not to purchase the plant and improve it. The court held that this could be done. In the course of the opinion the court referred to the case of State ex rel. Town of Canton v. Allen, 178 Mo. 555, 77 S. W. 868, where the question was submitted in the alternative, and held that so submitting the question did not vitiate the election. In State ex rel. Columbia v. Allen, supra, the court said:

"A kindred contention was made in the case of State ex rel. Town of Canton v. Allen, 77 S. W. 868, and it was held by this Court en Banc that it was competent to submit such a proposition in the alternative. We think that case disposes of this point. Here the proposition *is one only*; i. e., to buy the old waterworks and electric plant and improve them." (Italics ours.)

So the case cited by appellant seems to be an authority against its contention. Those interested in this question will find cases annotated in 5 American Law Reports, 538, where it is stated that the majority rule permits the proposition to be submitted in the alternative. The minority rule holds that to submit such a question in the alternative renders the election void. [See 5 A. L. R. 542.] The states so holding are, Kansas, New Jersey and Ohio. The case which precedes the annotations is Albuquerque v. Water Supply Co., 24 N. M. 368, 174 Pac. 217, 5 A. L. R. 519. The latter case reasoned that to submit the question in the alternative did not render the question a dual one, but that the purpose was single, that is, the acquisition of a municipal plant. From a reading of those cases it seems clear that the submission of the question in the singular, as was done in this case, is fully authorized. We cannot conceive any logical argument to the contrary.

It is next contended that the city of Pattonsburg did not obtain a certificate of convenience and necessity from the State Public Service Commission; that this was necessary before a plant could be legally constructed. The following cases definitely decide this contention against appellant: Missouri Public Utilities Co. v. City of Poplar Bluff, 2 P. S. C. 442; Public Service Commission v. Kirkwood, 4 S. W. (2d) 773, 319 Mo. 562; City of Columbia v. State Public Service Commission, 329 Mo. 38, 43 S. W. (2d) 813; State ex rel. City of Sikeston v. Public Service Commission of Mo., 336 Mo. 985, 82 S. W. (2d) 105, l. c. 111 (9-11). In the latter case the court said:

"The policy of our Legislature concerning the light and power business, up to the present time, has been to leave the field open to both private and public ownership. In any case where the people are not satisfied with the results of regulation, the right of any city to build its own plant, without asking the permission of the commission, and to furnish electricity to its people at such rates and under such conditions as it sees fit, without being subject to any regulation except the will of its own citizens, remains as a further safeguard in the public interest."

Appellant makes the point that the original plan of the city was to obtain from the Federal Government a grant of $17,420 and a loan of $50,000, for the purpose of constructing a light plant; that plans and specifications were prepared with that proposition in view; that that plan was still pending at the time of the election. It was alleged that, after the election authorizing the issuing of bonds in the

amount of $50,000, the Federal authorities rejected the city's application. It is contended that the city officials then changed the plans and constructed a light plant of a smaller capacity than originally intended. It is argued that the city officials were, under these circumstances, not authorized to proceed with the building of a plant without resubmitting the new plan to the voters of the city. The ordinance ordering the election provided specifically that it was for the purpose of determining whether the city should become indebted in the sum of $50,000 for the purpose of constructing an electric light and power plant. No reference was made to the proposals made to the Federal Government. Under the constitutional provision, Section 12a, Article X, above referred to, the people of Pattonsburg had the authority to vote an indebtedness upon the city for the purpose of building a light plant. This they did. Whether it was the expedient thing to do was for the people and the city officials to decide and not for the courts. Neither did the rejection of the plan by the Federal authorities, for whatever reason they deemed proper, diminish the power of the city to build its own plant. It is evident from plaintiff's petition that the city was determined to build a light plant. At the time of the election the request for Federal aid had not been granted. There is no allegation in the petition that any fraud was practiced on the voters, or that they were misinformed as to the true facts. We do not see any ground for a court of equity to enjoin the collection of the tax authorized by the voters, or to enjoin the authorities from operating the plant.

The judgment of the trial court is affirmed. *Cooley* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.