Williams, J.
 

 The only question raised by the demurrer is whether or not the legislation passed by council calling an election to determine whether bonds should be issued for the purpose of “acquiring or constructing waterworks” voiced a dual purpose. If not, the clerk of the municipality could not legally refuse to sign the anticipatory note, and a peremptory writ of mandamus should issue. We will therefore inquire whether or not the words “acquiring or constructing” express a double purpose.
 

 There are some cases in Ohio relating to the subject of inquiry, but before considering them it will prove somewhat instructive to weigh the authorities in other jurisdictions. According to the great weight of authority, expressions such as the one involved here do not express duality of purpose.
 
 City of Albuquerque
 
 v.
 
 Water Supply Co.,
 
 24 N. M., 368, 174 P., 217, 5 A. L. R., 519;
 
 C. B. Nash Co.
 
 v.
 
 City of Council Bluffs,
 
 174 F., 182;
 
 People
 
 v.
 
 Sisson,
 
 98 Ill., 335;
 
 Truelsen
 
 v.
 
 Mayor of Duluth,
 
 61 Minn., 48, 63 N. W., 714;
 
 *209
 

 Henderson
 
 v.
 
 City of Shreveport,
 
 137 La., 667, 69 So., 88, 5 A. L. R., 516;
 
 Tulloch
 
 v.
 
 City of Seattle,
 
 69 Wash., 178, 124 P., 481;
 
 Thomas
 
 v.
 
 City of Grand Junction,
 
 13 Colo. App., 80, 56 P., 665;
 
 State, ex rel. City of Columbia,
 
 v.
 
 Allen, State Aud.,
 
 183 Mo., 283, 82 S. W., 103;
 
 Everett
 
 v.
 
 Village of Potsdam,
 
 112 App. Div., 727, 98 N. Y. S., 963;
 
 Simpson
 
 v.
 
 City of Nacogdoches
 
 (Tex. Civ. App.), 152 S. W., 858;
 
 Beers
 
 v.
 
 City of Watertown,
 
 43 S. D., 14, 177 N. W., 502.
 

 The reasoning of these cases is in substance that the purpose is the single one of establishing municipal ownership of a public utility, and that the method of acquirement, whether by purchase or construction, relates only to the means; in accordance with this principle one scheme of municipal improvement relating to one kind of utility is considered as involving one subject. Although such expression of purpose leaves to the council of a municipality the choice of acquiring a public utility by purchase or by construction, there is still only one objective. In this way the municipality through its council is given the liberty to purchase an existing waterworks if satisfactory terms are offered, or to construct its own plant if it considers the terms disadvantageous. To afford opportunity to the council to select the preferable of two alternatives is to the interest not only, of the municipality, but, in many instances, to an existing private utility as well; the latter may choose to sell at a reduced price rather than to incur the risk of ruinous competition from a publicly owned utility enterprise.
 

 There are a few cases in which the contrary rule is adhered to, and citations sustaining both the majority rule and the minority rule are collected by the compiler in an annotation in 5 A. L. R., 538, 549.
 

 Since in the last analysis we are concerned with the law of Ohio, we turn our inquiry in that direction.
 

 In the case of
 
 Elyria Gas & Water Co.
 
 v.
 
 City of Elyria,
 
 57 Ohio St., 374, 49 N. E., 335, decided Jan
 
 *210
 
 uary 26, 1898, it was held that a resolution declaring the necessity for the issue and sale of the city’s bonds “for the purpose of the purchase and erection of water-works” involved a dual purpose and made the resolution fatally defective. At that time the Ohio statute gave the municipality power to issue bonds “for the erection or purchase of water-works.” It thus appears that the statute expressed the purpose in the alternative, and the resolution in the conjunctive. This fact has been stated in many of the cases cited as a reason for distinguishing that case. There was then no constitutional provision to confer authority on municipalities to acquire a public utility by purchase, construction or otherwise. An amendment to the Ohio Constitution (Article XVIII, Section 4), adopted September 3, 1912, reads as follows: “Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility.”
 

 This provision made, the State Constitution the source of municipal power as to utilities, whereas before its adoption municipal authority was derived from statutory enactments. While this change is of no controlling importance the whole situation has been altered by the passage of The Uniform Bond Act, which became effective August 11, 1927, 112 Ohio Laws, 364. Sections 2293-2 (amended 115 Ohio Laws, 52), 2293-19 (amended 114 Ohio Laws, 843) and 2293-20, General Code, found in said act, invite our attention.
 

 
 *211
 
 Section 2293-2 gives the taxing authority of any subdivision power to issue bonds for the purpose of “acquiring or constructing, any permanent improvement which such subdivision is authorized to acquire or construct.”
 

 Section 2293-19 provides for submitting to the electors of such subdivision the question of the issuance of any bonds which such subdivision has power to issue; for the passage of a resolution declaring the necessity of such bond issue, and for fixing the amount thereof; and, further, for the certification of the “resolution to the county auditor at least sixty days prior to the election at which it is desired to submit such questions.”
 

 Section 2293-20 contains the controlling statutory provisions, and so far as pertinent to the instant case it reads as follows: “The resolution provided for in the foregoing section shall relate only to one purpose. ‘One purpose’ shall be construed to include * * * in any case all expenditures, including the acquisition of a site and purchase of equipment, for any one utility, building or other structure, or group of buildings or structures for the same general purpose, or for one or more roads, highways, bridges and viaducts in-' eluded in the same resolution. ’ ’
 

 The language of this section is plain and free from double meaning; it applies to any bond issue of a subdivision, and a municipality is such a subdivision. This section expressly provides that all expenditures for any one utility shall constitute one purpose.
 

 This court is therefore able to distinguish the case of
 
 Elyria Gas & Water Co.
 
 v.
 
 City of Elyria, supra,
 
 from the instant case on two grounds, a difference in the phraseology of the resolutions and a change in the basic statutory law.
 

 Our conclusion is that the resolution of the council providing for a vote upon the issuance of bonds does not involve a dual proposition, and, therefore, the de
 
 *212
 
 murrer to the petition is overruled and a writ of mandamus is allowed.
 

 Writ allowed.
 

 Weygandt, C. J., Stephenson, Jones, Matthias, Day and Zimmerman, JJ., concur.